STATE OF VERMONT

SUPERIOR COURT

NATURAL RESOURCES BOARD,
Petitioner,

v.

THE STRATTON CORPORATION,
Respondent.

ENVIRONMENTAL DIVISION
Docket No. 106-7-14 Vtec

DECISION ON THE MERITS

**DECISION ON THE MERITS**

This case presents an uncommon intervention by a third party seeking to increase the penalty in a permit enforcement action by the state. The third party, Treetop at Stratton Condominium Association, Inc. (Association or Treetop), represents owners of 75 townhouse condominium units near Stratton Mountain in the Town of Stratton, Vermont. The parties to the enforcement action are the Natural Resources Board (NRB), the Agency of Natural Resources (ANR), and The Stratton Corporation (Stratton or Respondents), Treetop's developer. The Association has asked the Court to vacate the $42,375 penalty imposed on Stratton for failure to comply with its Act 250 land use permit and stormwater permit when Stratton built the townhouse condominium development. Ultimately, the Association seeks a higher penalty.

Stratton has admitted its permit violations. Those include unapproved changes to the stormwater management system that most notably have resulted in a leaky detention pond. To address the deficiencies, Stratton applied for and received an amended Act 250 permit in 2013 that alters the original Act 250 Permit and requires remedial work. In 2014, the NRB, in coordination with ANR, entered into an Assurance of Discontinuance (AOD) with Stratton. The AOD outlines the violations, assesses the penalties, and requires Stratton to comply with its permits.[1] A deadline of September 1, 2014 was set for completing the remedial work. However,

---

[1] Pursuant to 10 V.S.A. § 8007(a), the Secretary of Natural Resources or the Board may accept from a respondent an assurance of discontinuance of a violation as an alternative to administrative or judicial proceeding. In an AOD, the respondent admits the violation and agrees to perform specific actions to rectify environmental problems.

due to this case, the AOD and Stratton's obligations under it have been held in abeyance. 10 V.S.A. § 8012(d).

The Court has issued two pre-trial decisions that narrow the scope of this appeal. The only remaining issue is sufficiency of the penalty against Stratton. A two-day merits hearing was held on October 13 and 14, 2016 in the Costello Courthouse in Burlington, Vermont. The Association is represented by Attorney A. Jay Kenlan; Stratton is represented by Attorney Lisa B. Shelkrot; and the NRB and ANR are represented respectively by Attorneys Peter J. Gill and Elizabeth Schilling. Based on the evidence presented at trial, which was put into context by a site visit conducted on October 4, 2016, the Court renders the following findings of fact and conclusions of law.

**Findings of Fact**

1.      Stratton received Act 250 Land Use Permit 2W1142 (Original LUP) for the development of 25 three-unit townhouse buildings (Project) on November 18, 2002.

2.      Stratton built out the Project in three phases from 2002 to approximately 2006.

3.      Stratton failed to construct the Project in full accordance with the Original LUP and failed to seek and obtain a prior amendment to the Original LUP for the deviations from the Original LUP.

4.      The as-built construction of the Project deviated from the Original LUP in three broad ways: three-point paved turnarounds for fire truck access were not properly constructed; ledge cuts and slope gradients were constructed instead of approved and required retaining walls, which necessitated unapproved tree cutting and land clearing on about two acres; and the stormwater conveyance and treatment system was not built in accordance with Stormwater Discharge Permit #1-1537, resulting in a leaky detention pond among other problems.

5.      In March of 2012, Stratton filed an Act 250 application to amend the Original LUP, ("-D" Application). This amendment sought some restoration of the Project to the permitted conditions of the Original LUP and also sought certain amendments to the Original LUP to conform with as-built conditions.

6.      Treetop participated in the consideration of the amendment application before the District II Environmental Commission.

7.      Stratton and Treetop have a strained and litigious relationship.  In 2009, Treetop initiated a civil action against Stratton relating to alleged construction defects of the Project.  The parties settled the matter with Stratton paying the Association approximately $5 million dollars.

8.      Due in part to the strained relations and in part to Treetop's disagreement with remedial efforts within the "-D" application, Treetop did not support the application.

9.      Furthermore, for some time, Treetop would not allow Stratton access to the subject property for Stratton to address the violations of the Original LUP and associated environmental concerns.

10.     On October 21, 2013, the District 2 Environmental Commission issued LUP Amendment 2W1142-D ("-D" Permit), which included some restoration of the Project to the permitted conditions of the Original LUP and also sought certain amendments to the Original LUP to conform with as-built conditions.

11.     The "-D" Permit was not appealed and is final and binding.

12.     In the fall of 2012, Stratton began remedial efforts as set forth in the "-D" Permit.

13.     To date, not all remedial actions as set forth in the "-D" Permit are complete.

14.     The NRB, in consultation with ANR, entered into an AOD with Stratton on July 15, 2014.

15.     Both ANR and the NRB use a penalty calculation matrix for calculating penalties. The matrix is used to maintain uniformity and it tracks with the penalty factors that NRB and ANR are legally required to consider under 10 V.S.A. § 8010.

16.     The AOD requires Stratton to pay a civil penalty of $42,375; to reimburse the NRB and ANR for the value of the time their officials committed to responding to the violations, including prosecution of these violations, at $1,163.40; and to pay the $10 recording fee for notice of the AOD to the town of Stratton.  The AOD also requires Stratton to come into conformity with its permits.

17.     The deadlines for Stratton's remedial work were set according to the date the Court entered the AOD as an order.

18.     Due to Treetop's intervention and challenge of the penalties in this matter, the Court has not yet entered the AOD as an order.

19. The Project is located within the Styles Brook watershed. The watershed is impaired, but not for stormwater. The watershed is impaired as a result of sediment, or dirt, flowing in.

20. A failure of the stormwater system could further impair Styles Brook.

21. Stratton's illegal clearing of about two acres of land caused erosion that impacted an intermittent stream and a wetland, caused a rock fall, and created excessive icing in the Project's roads, driveways, and garages.

22. Association President Matthew Stoltz has fallen on the ice.

23. The fire truck turnarounds were not built to specifications.

24. The icy conditions and deficient fire truck access were potentially dangerous, but no major actual impact resulted.

25. NRB and ANR reacted timely to Respondents, attempted to have them voluntarily bring the Project into compliance, and did not act with unreasonable delay.

26. One of the stormwater detention ponds was constructed with the unauthorized burial of stumps, logs, and boulders.

27. Stratton knew or should have known of the permit violations at the Project prior to 2006.

28. There is clear evidence that Stratton knew of its various permit violations by November 2010, but did not report the stormwater permit violations until 2012.

29. Stratton chose to pursue its development interests prior to seeking and obtaining permit amendments.

30. Stratton previously violated 10 V.S.A. §§ 1259 and 1272, which prohibited discharges of materials into waters of the state without a permit and regulates discharges to waters and wetlands, respectively. The violations, which were related to snowmaking operations, resulted in an AOD that was signed in 1997 and carried a $9,750 penalty.[2]

---

[2] The violations were addressed in one AOD and are considered to be one prior violation for the purpose of determining Stratton's record of compliance. The Association also offered into evidence a 1998 decision by the Environmental Board denying Stratton's Act 250 permit request. Ex. 38; Re: The Stratton Corp., No. 2W0519-9R3-EB, Mem. Of Decision (Vt. Envtl. Bd. Jan. 15, 1998). The decision found that Stratton violated its Act 250 permit as a result of in-stream work to construct a bridge. Re: The Stratton Corp., No. 2W0519-9R3-EB, at 10 (Jan. 15, 1998). However, no enforcement action related to that violation was submitted into evidence.

31.     As part of its penalty calculation, ANR doubled its base penalty of $15,000 to deter future violations, finding that Stratton had not been cooperative or proactive in making lasting repairs to the stormwater management system even though Stratton knew the system was failing and discharges from the system were in a sediment impaired watershed.

32.     NRB increased the penalty by 10% to deter future violations.

33.     The value of the time that ANR and NRB officials committed to responding to Stratton's violations, including prosecution of these violations, totals $1,163.40.

34.     NRB afforded a 25% reduction in its penalty as an incentive for Stratton to enter the AOD.

35.     ANR and the NRB typically work in consultation with each other and do not seek double penalties for a violation of both Act 250 and ANR's rules and regulations.

36.     ANR considered a violation having a duration of one year or greater to be of long duration. The NRB originally considered a violation of six years to be moderate duration, however, at the time of trial revised this opinion and concluded that a six-year violation is of long duration.

## Conclusions of Law

### I.     Treetop Must Prove the Penalty is Insufficient by a Preponderance of the Evidence

The Association took advantage of a relatively new statute passed by the Vermont Legislature in 2012 to comply with federal requirements for certain programs and to standardize public participation for NRB and ANR enforcement actions.  Summary of Act No. 73 (H.258) (2012).  The statute, 10 V.S.A. § 8020, amended the public participation requirements in environmental enforcement actions, making it easier for third parties to intervene.[3]  The state law is consistent with the federal Clean Water Act, from which the state derives its enforcement power to protect waters of the United States.  See 33 U.S.C.A. § 1319 (g)(4)(C) (granting rights to

---

[3] Under 10 V.S.A. § 8020(i), the Secretary of Natural Resources and the Board are prohibited from opposing any motion filed for permissive intervention.  However, the law does require an intervenor to have filed written comments with the Board or ANR explaining his or her objection to the proposed action during the 30-day comment period provided.  § 8020(e).

interested persons who commented on the proposed penalty to request a hearing on the penalty).

Under the state law, the "sole purpose" of allowing a third party to intervene in an environmental enforcement action is to establish that the action is "insufficient to carry out the purposes" of the administrative environmental law enforcement statutes.  10 V.S.A. § 8020(h). The purposes of the enforcement statutes, in addition to standardizing the enforcement powers of the NRB and ANR, are to:

> (1) enhance the protection of environmental and human health afforded by existing laws;
> (2) prevent the unfair economic advantage obtained by persons who operate in violation of environmental laws;
> (3) provide for more even-handed enforcement of environmental laws;
> (4) foster greater compliance with environmental laws;
> (5) deter repeated violation of environmental laws; and
> (6) establish a fair and consistent system for assessing administrative penalties.

Id. § 8001.  The intervenor bears the burden of proving that the enforcement action is insufficient to meet these purposes by a preponderance of the evidence.  Id. § 8020(h).

The sufficiency of the penalty is the only triable issue in this case.[4]  Natural Res. Bd v. Stratton Corp., No. 106-7-14 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. July 13, 2015) (Walsh, J.). The state statute explicitly restricts the Association to contesting the sufficiency of the AOD.  10 V.S.A. § 8020(h); Natural Res. Bd v. The Stratton Corp., No. 106-7-14 Vtec, slip op. at 2-4 (Vt. Super. Ct. Envtl. Div. Apr. 10, 2015) (Walsh, J.).  For that limited purpose, the Court has considered the violations that led to the AOD.  Stratton Corp., No. 106-7-14 Vtec at 3 (July 13, 2015).

As the intervenor, the Association must prove by a preponderance of the evidence that the penalties imposed on Stratton are insufficient to meet the purposes of the state's administrative law enforcement statutes.

## II.    How ANR and the NRB Calculate Administrative Penalties

NRB and ANR must consider seven factors when assessing a penalty:

---

[4] The penalty for failing to comply with the Act 250 Permit and the stormwater permits, or to seek advance approval for alterations to the Project, is actually a combination of penalties and fees totaling $43,548.40.

(1) the degree of actual or potential impact on public health, safety, welfare, and the environment resulting from the violation;

(2) the presence of mitigating circumstances, including unreasonable delay by the Secretary in seeking enforcement;

(3) whether the respondent knew or had reason to know the violation existed;

(4) the respondent's record of compliance;

(5) [Repealed.]

(6) the deterrent effect of the penalty;

(7) the State's actual costs of enforcement; and

(8) the length of time the violation has existed.

10 V.S.A. § 8010(b)(1)–(8). The maximum penalty for each violation is $42,500, plus $17,000 for each day a penalty continues. Id. § 8010(c)(1). The state may also "recapture economic benefit" that the violator may have derived from the violation, up to the total maximum penalty allowed of $170,000. Id. § 8010(c)(2).

In an effort to standardize penalties and ensure a fair process, ANR and NRB enforcement officers use a form that is based on the seven factors. They rate the severity of the violations from 0 to 3 for factors (1), (3), (4) and (8), and come up with an initial penalty score. The highest possible initial score is a 15, which equates to an initial penalty of $42,500 for a Class I violation, the maximum allowed.[5] Classes II, III, and IV carry lower maximum penalties of $30,000, $10,000 and $3,000 respectively. The initial penalty can then be adjusted based on penalty factors (2), (6) and (7). If the violator signs an AOD, agreeing not to dispute it, the final penalty may be reduced by 25%. Generally, NRB and ANR treat multiple violations of the same permit as one violation when calculating penalties.

Here, NRB and ANR assessed two violations: one violation of the Act 250 permit and one violation of the stormwater permit. NRB investigated the Act 250 Permit violations; ANR investigated the stormwater permit violations. After inspecting conditions on site at the Project, ANR and NRB enforcement officers separately classified Stratton's violations as Class II, which is "more than a minor violation" of the permits. Each officer also gave Stratton an initial penalty

---

[5] A class I violation "[p]resents a threat of substantial harm" or "has caused substantial harm" to the public health, safety or welfare or to the environment. ANR and NRB Administrative Penalty Form.

score of 9 out of 15, which equates to an initial penalty of $15,000 for each violation, or $30,000 total. Adjustments raised the final total to $42,375 for both violations.

Aaron Brondyke, a Permit Compliance officer for NRB, investigated the Act 250 Permit violations that included failure to pave three-point turn configurations for fire truck access; failure to construct retaining walls in certain locations; and clearing two acres of trees. Aaron Brondyke Prefiled Test. 1–2; Natural Res. Bd. v. The Stratton Corp., Assurance of Discontinuance 2 (filed July 17, 2014). McCall, who was an Environmental Analyst for ANR at the time the AOD was filed and is now an ANR Environmental Enforcement Officer, investigated the stormwater permit violations. Among those were the improper construction of a stormwater detention basin, or pond, which included the unauthorized burial of stumps, logs and boulders; and the improper installation of the stormwater collection system, which included the installation of piping in several locations that did not conform to the permit.

The first penalty factor weighs the degree of actual or potential impact the violation had on public health, safety, and welfare, and separately asks for a rating as related to the environment, as follows:

A. No actual impact or minor potential impact [0 points]
B. Minor actual impact or moderate potential impact [1 point]
C. Moderate actual impact or major potential impact [2 points]
D. Major actual impact [3 points]

Both enforcement officers found the violations represented a "moderate actual impact or major potential impact" to the environment and assigned a score of 2. Brondyke also rated as a 2 the impact on public health, safety, and welfare, while McCall gave a rating of 1. Brondyke found that the fire truck turnarounds were not built to specifications and caused a "moderate actual or major potential impact" to public safety. Brondyke Prefiled Test. 3. For the stormwater permit violation, McCall found "[t]here is a moderate potential for road collapse due to a substantial amount of water going underground unaccounted for, but otherwise, there are no actual impacts on public health, safety or welfare." McCall Prefiled Test. 3.

Following a similar matrix, Brondyke further found that Stratton had knowledge of its legal requirements under Act 250 because it had a permit (penalty factor 3; score of 2); that there was some evidence that Stratton knew the violation existed (penalty factor 3; score of 2); that

8

Stratton had one prior violation (penalty factor 4; score of 1); and that the present violation had existed for a moderate duration (penalty factor 8; score of 2).[6, 7]

McCall further found that Stratton had knowledge of its legal requirements under the stormwater permit because it had a permit (penalty factor 3; score of 2); that there was clear evidence that Stratton knew the violation existed (penalty factor 3; score of 3); that Stratton had one prior violation (penalty factor 4; score of 1); and that the present violation had existed for a long duration (penalty factor 8; score of 3).

After arriving at the initial penalty of $15,000 for each of the two violations, Brondyke and McCall factored in adjustments. Penalty factor 2 requires enforcement officers to consider whether mitigating circumstances warrant a decrease in the penalty, such as "unreasonable delay by the [S]ecretary [of Natural Resources] in seeking enforcement." 10 V.S.A. § 8010(b)(2). Neither Brondyke nor McCall found there were mitigating circumstances to reduce the penalty.

Penalty factor 6 allows the Secretary to increase the penalty up to the maximum allowed in order to deter the respondent and others from committing future violations. Here, the NRB increased the penalty for the Act 250 Permit violations by 10%, from $15,000 to $16,500. For the stormwater permit violations, McCall doubled the initial penalty to $30,000, the maximum available for a Class II violation. McCall determined the maximum deterrent was necessary because Stratton had not been cooperative or proactive in making lasting repairs to the stormwater management system "even though they knew the system was failing and discharges from the system were in a sediment impaired watershed." McCall Prefiled Test. 5. He called the noncompliance "egregious." Id.

Finally, NRB reduced Stratton's penalty for violating the Act 250 Permit by 25%, to $12,375, because Stratton admitted the violations and agreed to sign the AOD without dispute. Neither NRB nor ANR adjusted the penalty to account for any economic benefit Stratton may have gained by violating its permits, as allowed under 10 V.S.A. § 8010(c)(1). According to

---

[6] For penalty factor 3, NRB and ANR take the lower of the two scores assigned, one for the respondent's legal knowledge and the other for knowledge of the facts.

[7] At the hearing, Brondyke testified that he should have assigned a rating of 3 for the length of time the violation existed. However, he also testified that the additional point—bringing the initial penalty score from a 9 to a 10—would not have changed the penalty amount. The penalty scale lumps scores of 9 and 10 together; both equate to an initial penalty of $15,000 for a Class II violation.

Brondyke and McCall, evidence demonstrating an economic benefit was not readily available. Brondyke also determined the administrative penalties assessed for the Act 250 Permit violations were adequate without the addition of economic benefit recapture.[8]

### III. The Court's Penalty Assessment

The Court must determine whether the penalty assessed against Stratton is sufficient to fulfill the purposes of the state's environmental law enforcement statutes. 10 V.S.A. § 8020(h).

   a. *Penalty Factor 1: Actual or Potential Impact on Public Health, Safety, Welfare and the Environment*

There is no credible evidence that the Permit violations caused a "major <u>actual</u> impact" that harmed the public health, safety, welfare, or the environment. ANR and NRB Administrative Penalty Form (emphasis added). Any impact is either minor, or represents a potential to cause a major impact. In terms of the stormwater permit violations, Styles Brook, the water body that the Project drains into, is not impaired due to stormwater runoff. The stream is impaired as a result of sediment, or dirt, flowing in. McCall stated there is a "major <u>potential</u> for impact because a failure of the [stormwater] system could result in further impairment of Styles Brook." McCall Prefiled Test. 3 (emphasis added). The Association provided no evidence to dispute these findings.

Additionally, Stratton illegally cleared about two acres of trees from the hillside that caused erosion which impacted an intermittent stream and a wetland; created a rock fall; and caused excessive icing in the roads, garages and driveways. Such conditions are potentially dangerous, both to the environment and people. Indeed, Matthew Stoltz, the Association's president, reported that he had fallen on the ice. The Association also claimed that ice on roads would have prevented emergency vehicles from accessing portions of the Project. But there is

---

[8] Penalty factor 7 allows the Secretary to tack on the state's actual costs of enforcement. In this case, NRB's enforcement costs were $520 and ANR's enforcement costs were $643.40. The state also added a $10 fee for the cost of recording the AOD with the Town of Stratton. The total penalty assessed against Stratton, including the enforcement costs and recording fee, is $43,548.40.

no evidence that this actually occurred, or any other major actual impact. The Court therefore agrees with the state's assessment of this penalty factor.

b. *Penalty Factor 2: Mitigating Circumstances*

Stratton emphasizes that the Association did not allow access to the Project to address the violations and associated environmental concerns in a timely manner. But that does not justify the violations, which occurred over at least six years and began long before the Association took ownership of the Project. Nor does it explain why Stratton took so long to report the violations to the state. Once informed, the NRB and ANR officials responded promptly and attempted to bring the Project into compliance voluntarily. The Association did not provide evidence on this penalty factor. The Court agrees with the state's assessment of this factor, and declines to reduce Stratton's penalty based on mitigating circumstances.

c. *Penalty Factor 3: Whether the Respondent Knew or Had Reason to Know the Violation Existed*

Stratton knew or should have known about both its legal requirements under the permits and the facts of the violations for some years prior to reporting them to the state and seeking and obtaining permit amendments. Significantly, it appears that Stratton—through its environmental consultant—reported to the state in 2009 and 2011 that the stormwater system was in compliance with the permit, when it knew the stormwater pond was defective as early as 2003.[9] Jeff Nelson Test. Had Stratton been a significant repeat violator (see subsection d below), this factor would have warranted a higher score and possibly an increased penalty. As it is, the Court agrees with the state's assessment of this penalty factor.

d. *Penalty Factor 4: Respondent's Record of Compliance*

The record presented shows that Stratton previously violated 10 V.S.A. § 1272, which regulates discharges to waters and wetlands, § 1259(a), which prohibits the discharge of materials into waters of the state without a permit, and its Act 250 permit. Sec'y, Vt. Agency of Natural Res. v. The Stratton Corp., No. E97-033 Vtec. slip op. at 1–4 (Vt. Envtl. Ct. Mar. 11, 1997)

---

[9] Stratton offered that there were efforts to fix the problems and that it was not again aware of problems until 2010.

11

(Wright, J.) (entering an order for an Assurance of Discontinuance). The violations occurred in 1996, when Stratton changed its snowmaking process and failed to install proper erosion controls to protect Stratton Lake and Winhall River from eroded silt and sediment. Id. at 2–3. Stratton received a $9,750 penalty. Id. at 4. Both NRB and ANR gave Stratton a score of 1 for this penalty factor, the standard score for one prior violation. The Association did not provide evidence of additional prior violations by Stratton.[10] The Court agrees with the state's straight-forward assessment of this factor.

e. *Penalty Factor 6: The Deterrent Effect*

In considering the importance of deterring respondents from future violations, we note that Stratton is a sophisticated permittee having many land use and environmental permits. We also note immediately above that Stratton has only one prior violation of the many permits. We aim to encourage respondents to respect all permits which is part of our deterrent consideration.

ANR doubled the base penalty, from $15,000 to $30,000, the maximum available. In explaining the reason, McCall found Stratton's noncompliance was "egregious" and that Stratton was uncooperative in fixing the problems with the stormwater management system. The NRB did not express similar observations. NRB increased its penalty for the Act 250 permit violation by 10% for deterrence. The Court finds the overall adjustment of $16,500 for deterrent effect is sufficient.

f. *Penalty Factor 7: State's Actual Costs of Enforcement*

The value of the time that Brondyke and McCall committed to respond to Stratton's violations, including prosecution of these violations, totals $1,163.40. There is no evidence challenging this amount.

g. *Penalty Factor 8: Length of Time the Violation Existed*

Stratton's environmental violations continued for as long as a decade. Clearly, the violations of the Act 250 permit and the stormwater permit lasted for a long duration and deserve to receive the highest penalty score available. ANR did give Stratton a 3 for this factor—the

---

[10] See discussion *supra* note 2.

maximum. NRB did not. However, even if NRB had determined the Act 250 permit violations were of long duration, it would not have changed the overall penalty amount. The Court therefore concludes that the penalty does not require adjustment under this factor.

h. *Economic Benefit*

NRB and ANR did not include economic benefit as a component of the penalty. Neither had readily available information, nor did they request information, about whether Stratton had benefitted economically from its permit violations. The Association, through Matthew Beck, its expert witness, testified that Stratton gained more than $400,000 by not building the retaining walls required under its Permit. He based his estimate on construction documents. Stratton, through JF Hodges, testified credibly that there was no economic benefit for Stratton because the construction contract was based on a flat rate. Hodges further testified the company has spent about $700,000 attempting to repair the stormwater management system. The Court concludes that Stratton received no economic benefit, and none will be factored into the penalty.

## Conclusion

For the reasons stated above, we conclude that the Association failed to prove by a preponderance of the evidence that the penalties imposed on Stratton are insufficient to meet the purposes of the state's administrative law enforcement statutes. We therefore conclude that the $42,375 civil penalty and $1,173.40 in fees assessed against Stratton for violating its Act 250 and stormwater permits is sufficient to carry out the purposes of the state's environmental enforcement laws.

We **AFFIRM** the legal conclusions rendered by the ANR and NRB and detailed in the July 2014 AOD and do hereby **AFFIRM** the penalty and fees.

## Rights of Appeal (10 V.S.A. § 8012(c)(4)–(c)(5))

**WARNING:** This Decision and the accompanying Judgment Order will become final if no appeal is requested within 10 days of the date this Decision is received. All parties to this proceeding have a right to appeal this Decision and Judgment Order. The procedures for requesting an appeal are found in the Vermont Rules of Appellate Procedure (V.R.A.P.) subject to superseding provisions in Vermont Rule for Environmental Court Proceedings (V.R.E.C.P.)

4(d)(6).  Within 10 days of the receipt of this Order, any party seeking to file an appeal must file the notice of appeal with the Clerk of the Environmental Division of the Vermont Superior Court, together with the applicable filing fee.  Questions may be addressed to the Clerk of the Vermont Supreme Court, 111 State Street, Montpelier, VT 05609-0801, (802) 828-3276.  An appeal to the Supreme Court operates as a stay of payment of a penalty, but does not stay any other aspect of an order issued by this Court.  10 V.S.A. § 8013(d).  A party may petition the Supreme Court for a stay under the provisions of the Vermont Rules of Civil Procedure (V.R.C.P.) 62 and V.R.A.P. 8.

A Judgment Order accompanies this Decision.  This concludes the current proceedings before this Court.

Electronically signed on November 17, 2016 at 11:32 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division